UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

POLLY R. BROOKS,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:08-cv-43

Dlott, J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. at 18-26) (ALJ's decision)).

**I.**

Plaintiff filed an application for a DIB on March 18, 2004, alleging a disability onset date of March 19, 2002, due to anxiety, depression, frequent upper respiratory infection, sinusitis, bronchitis, and occasional high blood pressure. (Tr. 126-28, 136, 145). Plaintiff's insured status for DIB expired on December 31, 2003.[2] Her application

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] In order to be entitled to DIB, plaintiff must prove that she became disabled prior to the expiration of her insured status. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which plaintiff was represented by counsel, was held on July 18, 2006. (Tr. 587-626.) Mr. Eric W. Pruitt testified as a vocational expert.

On October 27, 2006, the ALJ entered his decision denying plaintiff's claim. That decision stands as defendant's final determination consequent to denial of review by the Appeals Council on November 14, 2007. (Tr. 5-7.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since March 19, 2002 the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*)

3. The claimant has the following "severe" impairments: (1) asthma; and (2) depression and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, on or before December 31, 2003, her date last insured, the claimant had the residual functional capacity to do at least medium work subject to: 1) no limitations on her ability to sit, stand or walk; 2) inside work in a temperature-controlled, clean-air environment; 3) low stress work featuring no inherently dangerous or stressful activities. By definition, medium work ordinarily requires the ability to lift twenty pounds frequently and fifty pounds maximum, and to engage in a good deal of sitting, standing, or walking.
6. The claimant is unable to perform any past relevant work (20 CFR

2

>       404.1565)
>
> 7.    The claimant was born on February 16, 1946 and was fifty six years old on the alleged disability onset date, which defines as an individual of advanced age. (20 CFR 404.1564.)
>
> 8.    The claimant has at least a high school education, training as a nurse, and is able to communicate in English (20 CFR 404.1564.)
>
> 9.    The claimant has acquired work skills which can be transferred with minimal vocational adjustment at light and moderate adjustment at sedentary (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.   Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566).
>
> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 19, 2002 through December 31, 2003, the last date she had disability insured status. Therefore, her claim must be denied. (20 CFR 404.1520(g)).

(Tr. 29 - 36.)

In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB

On appeal, plaintiff maintains that: (1) the ALJ erred in evaluating plaintiff's nervous and mental impairments; (2) the ALJ erred in weighing the treating psychologists' opinions and failed to give goods reasons for rejecting their limitations; (3) the ALJ erred in evaluating plaintiff's pain, credibility, and subjective complaints; and (4) the ALJ erred in failing to find that plaintiff's asthma met the requirements of Listing No. 3.03(B); and (5) the ALJ committed various vocational errors. Each argument will be

3

addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can

4

still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.*, No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform her past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, plaintiff asserts that ALJ's RFC finding failed to incorporate plaintiff's nervous and mental impairments. Specifically, plaintiff maintains that the ALJ's generic limitation of "no inherently stressful work" does not cover the limitations resulting from plaintiff's depression and anxiety.

In support of her argument, plaintiff relies on a note by her therapist, Margaret

Rinck, Ed. D., from April 2004 purporting to assess plaintiff's functional capacity (Tr. 335).[3] According to plaintiff, "[b]efore December 31, 2003, Dr. Rinck, the treating psychologist in 2002 and 2003, specifically noted that Mrs. Brooks had limited concentration, tended to withdraw, and was very limited by people she did not know." (Tr. 335). However, when Dr. Rinck rendered this opinion, she admitted that she had not seen Plaintiff in at least a year (334-35).

While plaintiff claims that Dr. Rinck documented that these problems existed before the expiration of plaintiff's insured status, the medical record undermines that claim.

As noted by the Commissioner, Dr. Rinck did not perform a complete formal evaluation with testing. Moreover, although plaintiff was diagnosed with post-traumatic stress disorder (PTDS), based on the death of a person more than 20 years earlier, the diagnosis was not supported clinically or historically since plaintiff was able to work after the patient died. (Tr. 33); *See Crisp v. Sec'y of Health & Human Servs*., 790 F.2d 450, 452 (6th Cir. 1986).

Thus, as fully explained below, the ALJ reasonably declined to grant controlling weight or even substantial deference to Dr. Rinck's opinion. *See Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

---

[3] The note was completed after the expiration of Plaintiff's insured status.

**B.**

For her next assignment of error, plaintiff maintains that the ALJ erred in failing to give deference to the opinion of Drs. Rinch and Entner, plaintiff's treating therapists. Plaintiff further asserts that the ALJ erred in failing to give "good reasons" for rejecting their findings. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

Plaintiff saw Dr. Rinck, between June 2002 and January 2003, about once each

month. (Tr. 339-67). Plaintiff initially reported childhood abuse issues, and later in June 2002, plaintiff reported marital problems with her husband, and she also remembered her parents fighting (Tr. 362-63). Plaintiff attended individual therapy sessions several times a month until January 14, 2003. (Tr. 338-59). In November 2002, plaintiff was taking computer classes and "doing well." (Tr. 344). She expressed interest in taking more classes including keyboarding and general money management. (Tr. 344).

In April 2004, Ms. Rinck completed a form purporting to assess plaintiff's mental status, although she acknowledged she had not seen plaintiff in at least a year, had no access to plaintiff's file, and had no recent information. (Tr. 334-36). She indicated plaintiff was highly anxious and depressed due to childhood and marital abuse. (Tr. 335). She had "damaged" concentration and ability to think logically; could not perform strenuous activity; tended to withdraw and become passive, and was intimidated by people she didn't know. (Tr. 335).

Dr. Rinck further noted that plaintiff had anxiety and depression "all her life" but her symptoms "worsened before she sought treatment" (Tr. 336). Though Dr. Rinck acknowledged having "no information recently" regarding plaintiff's response to treatment, Dr. Rinck claimed that plaintiff had "very limited" ability to tolerate routine daily and work stressors (Tr. 336).

In April 2004, about a month after she applied for DIB in March 2004, plaintiff began seeing Dr. Entner, a psychologist. (Tr. 417). In July 2004, Dr. Entner wrote an opinion that plaintiff had significant problems, and felt that "this pattern has essentially

been present for many years and currently is at a level that would prohibit her from any kind of sustained work." (Tr. 412).

Dr. Entner also claimed that plaintiff's psycho-social history "strongly indicates her current level of depression has disabled her prior to 12-31-03." (Tr. 412). He completed an assessment opining that plaintiff had marked (seriously limited but not precluded) ability to interact appropriately with the public, coworkers, and supervisors; deal with work pressure; and understand, remember and carry out detailed instructions. (Tr. 410-11). Dr. Entner based these limitations on the June 2004 MMPI-2 and plaintiff's reported history. (Tr. 411).[4]

As noted by the Commissioner, the ALJ reasonably found that Dr. Rinck did not perform a complete formal evaluation with testing. Thus, the ALJ observed that Dr. Rinck's opinion, at best, "was based on poorly supported subjective statements of the client and is not compatible with the record as a whole (including her ability to carry out routine activities of daily living and also assist her ill husband)." (Tr. 33). Accordingly, the ALJ reasonably declined to grant controlling weight or even substantial deference to Dr. Rinck's opinion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

Similarly, with respect Dr. Entner's opinion, the ALJ properly noted that Dr.

---

[4] In June 2004, plaintiff underwent MMPI-2 testing, wherein she obtained elevated scores in 9-of-10 scales, suggestive of multiple, intense, and varied psychological issues (Tr. 414).

Entner saw plaintiff for a time only in 2004 (after her insured status had expired) and reasonably rejected it because Dr. Entner's opinion was not supported by the record. (Tr. 33).

Notably, when Dr. Entner wrote his July 2004 opinion, he indicated that plaintiff had significant problems and felt that "this pattern has essentially been present for many years." (Tr. 412). However, he stated that her pattern "<u>currently</u> is at a level that would prohibit her from any kind of sustained work" (Tr. 412) (*emphasis added*). Though he also claimed that her psycho-social history, as told by plaintiff, "strongly indicates her current level of depression has disabled her prior to 12-31-03," his opinion arguably does not relate to the relevant time period since the limitations he prescribed were current limitations. (Tr. 412). Moreover, he never saw plaintiff before her insured status expired.

Plaintiff, however, asserts that the ALJ failed to give "good reasons" for the weight assigned to Drs. Rinck and Entner because "as a matter of law" treating sources may give retrospective diagnosis or limitations. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir.1985) (evidence of medical condition after insurance cutoff must be considered to the extent it illuminates claimant's health before that date)). Plaintiff's assertion is misplaced, however, because the ALJ's analysis is consistent with the rationale found in both *Higgs* and *Martonik*.

In *Higgs* and *Martonik*, the Court found that the ALJ must consider evidence after the expiration of the Claimant's insured status. Here, the ALJ explicitly discussed and considered plaintiff's psychological treatment with Dr. Ramirez, Ms. Rinck, Dr. Entner, and Dr. Camm, and her evaluation by Dr. Chiappone (all of which occurring after the

expiration of plaintiff's insured status) (Tr. 30-33). The ALJ noted that Dr. Entner's November 2005 letter "does not suggest dysfunction of disabling proportions" and that Dr. Chiappone's 2006 assessment indicated that plaintiff had "some mild-to-moderate impairment of social functioning and moderately reduced stress tolerance." (Tr. 33)

Thus, the ALJ considered the medical evidence and treatment history after December 31, 2003 (plaintiff's last date insured) and properly found that they did not support a finding of disability. Furthermore, the ALJ clearly articulated his reasoning for the weight assigned to the opinions of Ms. Rinck and Dr. Entner, and the undersigned finds that the ALJ's decision to give little weight to their findings is supported by substantial evidence.

**B**.

For her next assignment of error, plaintiff maintains that the ALJ erred in evaluating her pain, credibility, and subjective complaints. Plaintiff asserts that the ALJ improperly relied on plaintiff's daily activities and failed to consider plaintiff's use of a medication and extensive psychological treatment beginning in 2002. Plaintiff's assertions are unavailing.

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be

expected to give rise to the alleged disabling pain.  *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff -  to evaluate that plaintiff's credibility.  As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

Here, the ALJ noted that despite plaintiff's claims of disabling symptoms, plaintiff has been managed conservatively with counseling and medication, and her treatment records fail to document disabling medication side effects.  (Tr. 34).  The ALJ also properly considered that plaintiff engaged in a variety of daily activities . (Tr. 34).  He noted that, during cross-examination by counsel, plaintiff claimed that she required frequent rest, but that her initial testimony was that she could perform household chores, drive, shop, attend church, and had regular social contacts.  (Tr. 34).  Moreover, though she claims she could only perform activities with breaks, she did not mention any major limitation in daily activities to Dr. Chiappone.  Instead, plaintiff reported that, while living with her daughter, she was able to clean and do laundry, cook, do dishes, take care of her husband, take her husband to rehab, grocery shop, and got together with a support

group until her husband had a stroke. (Tr. 565).

Thus, the ALJ properly characterized the evidence regarding plaintiff's activities, and it was appropriate for him to consider this factor in making his credibility finding. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

Here, the ALJ properly considered his own observations in making a credibility finding. SSR 96-7p; *Buxton*, 246 F.3d at 773 ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

## C.

For her fourth assignment of error, plaintiff maintains the ALJ erred in finding that her asthma failed to meet the requirements of Listing 3.03(B). Specifically, plaintiff asserts that the ALJ improperly failed to give deference to Dr. Strait's opinion that her asthma met the requirements of the listing. Plaintiff's assertion lacks merit**.**

To qualify for disability based on asthma attacks, § 3.03B requires attacks as defined in section 3.00 C, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or six times in one year. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B (2004). § 3.00 requires documentation of each attack, including hospital, ER, and physician notes, indicating the dates of treatment; clinical and laboratory findings on presentation, such as blood gas studies; the treatment administered; and the time period required for treatment and response.

Under the listing, attacks of asthma are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment such as intravenous bronchodilator or antibiotic therapy in a hospital, emergency room or equivalent setting." Id. at § 3.00C. For asthma, the medical evidence "should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction." *Id*.

Moreover, to meet the requirements of a listed impairment, plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

Here, in August 2004, Dr. Strait found that plaintiff's condition met Listing 3.03B because she had "frequent attacks of asthma in spite of medical treatments;" "6 attacks per year" (Tr. 438).

However, as noted by the Commissioner, while plaintiff undoubtedly complained of asthma and breathing symptoms virtually every time she was seen for regularly

14

scheduled medication refill visits, the record fails to document, as required by the listing, that her symptoms were severe enough to meet the listing.

The record contains virtually none of the documentation of each attack, including hospital, ER, and physician notes, indicating the dates of treatment; clinical and laboratory findings on presentation, such as blood gas studies; the treatment administered; and the time period required for treatment and response. Nor does the record document that when plaintiff complained of asthma or other breathing symptoms, she required intensive treatment such as intravenous bronchodilator or antibiotic therapy in a hospital, emergency room or equivalent setting.

The ALJ reasonably rejected Dr. Straight's opinion since his treatment notes plainly fail to support his opinion and lack the numerosity and clinical corroboration required under § 3.00C criteria (Tr. 31). The ALJ noted specifically that in 2002 Dr. Straight saw plaintiff only three times for upper respiratory infections, once for shortness of breath, twice for bronchitis, and once for chest tightness (Tr. 31).

Accordingly, the ALJ's determination that plaintiff did not meet Listing 3.03B is supported by substantial evidence and should not be disturbed.

**D.**

For her last assignment of error, plaintiff maintains that the ALJ's hypothetical questions to the vocational expert were improper because they did not define low stress work individually and instead relied on a generic definition of low stress work. Plaintiff asserts that ALJ should have included a limitation from interacting with others.

15

However, as explained above, the ALJ reasonably did not include those limitations because they are not supported in the record. The ALJ was not required to include limitations in his hypothetical question that were not supported or not credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because she could perform a significant number of jobs (Tr. 616-20). *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

For the foregoing reasons, plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: February 6, 2009  s/Timothy S. Black
Timothy S. Black
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

POLLY R. BROOKS,   Case No. 1:08-cv-43

 Plaintiff,   Dlott, J.
                Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

 Defendant.

## NOTICE

 Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).